UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES STELLICK, | Case No. 11-CV-0730 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER |
| U.S. DEPARTMENT OF EDUCATION d/b/a National Student Loan Data System, | |
| Defendant. | |

Thomas J. Lyons, Jr., CONSUMER JUSTICE CENTER, P.A., for plaintiff.

Erika R. Mozangue, UNITED STATES ATTORNEY'S OFFICE, for defendant.

Plaintiff James Stellick borrowed about $2,850 in the mid-1970s to pay for college. He never repaid those student loans. In December 2009, Stellick applied for financial aid at Minnesota State College Southeast Technical School; his application was denied by the school. Stellick again applied for financial aid in 2010, this time at Jones International University; again, his application was denied by the school. In both instances, the reason given by the school for denying Stellick's financial-aid application was that information provided by the National Student Loan Data System ("NSLDS") indicated that Stellick still owed money on his old student loans. Stellick alleges that the information given to the schools by the NSLDS was false, because his student-loan obligations were discharged in 1989 via bankruptcy, and therefore he is no longer obligated to repay his loans.

The NSLDS is operated by the U.S. Department of Education ("DOE"). Stellick filed this lawsuit against the DOE. He contends that the DOE, through the NSLDS, operates as a "consumer reporting agency" for purposes of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

§ 1681 et seq. Stellick further alleges that the DOE is violating the FCRA by disseminating false information about his student-loan history. The DOE moves to dismiss the claims against it, arguing that sovereign immunity deprives the Court of subject-matter jurisdiction over those claims.[1] The Court agrees with the DOE.

## I. THE FCRA

Enacted in 1970, the FCRA seeks to ensure the "[a]ccuracy and fairness of credit reporting." 15 U.S.C. § 1681(a). Toward that end, the FCRA requires that "[e]very consumer reporting agency shall maintain reasonable procedures designed to avoid" inaccurate and prohibited disclosures. 15 U.S.C. § 1681e(a). "Consumer reporting agency" is defined, in part, as "any person which . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information . . . ." 15 U.S.C. § 1681a(f). "Person" is defined by the FCRA as "any individual, partnership, corporation, trust, estate, cooperative, association, *government or governmental subdivision or agency*, or other entity." 15 U.S.C. § 1681a(b) (emphasis added). Accordingly, if a governmental entity regularly engages in the practice of assembling or evaluating consumer-credit information, then it is a consumer-reporting agency for purposes of the FCRA — and therefore, like all consumer-reporting agencies, it must maintain reasonable procedures to avoid inaccurate and prohibited disclosures.

The FCRA provides remedies for violations of its substantive provisions. Any "person" who *negligently* fails to comply with the FCRA with respect to any consumer can be held liable

---

[1] Although the DOE moves to dismiss Stellick's claims pursuant to Fed. R. Civ. P. 12(b)(6), it argues in its brief that the Court lacks subject-matter jurisdiction. ECF No. 44. The Court will therefore construe the DOE's motion as having been filed pursuant to Fed. R. Civ. P. 12(b)(1).

to that consumer for actual damages, costs, and attorney's fees. 15 U.S.C. § 1681o. Any "person" who *willfully* fails to comply with the FCRA with respect to any consumer can be held liable to that consumer for actual damages, statutory damages of up to $1,000, punitive damages, costs, and attorney's fees. 15 U.S.C. § 1681n. As explained above, "person" is defined by the FCRA to include governmental entities. Stellick argues that the FCRA therefore authorizes consumers to sue governmental entities for money damages when those entities fail to comply with the substantive requirements of the FCRA.

The DOE acknowledges that agencies of the federal government must comply with the substantive requirements of the FCRA. The DOE denies, however, that federal agencies can be held liable for damages if those agencies violate the FCRA. Instead, the DOE argues that sovereign immunity insulates federal agencies (such as itself) from suits for damages brought under the FCRA.

## II. SOVEREIGN IMMUNITY

"Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" *United States v. Bormes*, 133 S. Ct. 12, 16 (2012) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)). "[T]he Government's consent to be sued must be construed strictly in favor of the sovereign . . . ." *Nordic Village*, 503 U.S. at 34 (internal quotations omitted).

Stellick contends that the FCRA contains within its definition of "person" an unequivocal waiver of sovereign immunity. As explained above, the FCRA defines "person" as including any "government or governmental subdivision or agency . . . ." 15 U.S.C. § 1681a(b). Congress was thus crystal clear that a federal agency is a "person" for purposes of the FCRA. Moreover,

Congress was also crystal clear in providing that a consumer may sue "*any* person" who violates the FCRA. 15 U.S.C. § 1681n; 15 U.S.C. § 1681o (emphasis added). Thus, says Stellick, Congress unequivocally consented to consumers suing federal agencies such as the DOE for violations of the FCRA.

In support of his argument, Stellick compares the FCRA to two closely related statutes — the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq. TILA was passed by Congress in 1968 and constitutes subchapter I of the Consumer Credit Protection Act ("CCPA"), Pub. L. No. 90-321, 82 Stat. 146 (1968); the FCRA was passed in 1970 and constitutes subchapter III of the CCPA. Like the FCRA, TILA defines "person" as including governmental entities. *See* 15 U.S.C. § 1602 (defining "person" as "a natural person or an organization," and "organization" as including "government or governmental subdivision[s] or agenc[ies]"). And like the FCRA, persons who violate TILA are liable for damages. *See* 15 U.S.C. § 1640(a) (holding "any creditor who fails to comply" liable, with creditors defined within § 1602(g) as persons). Unlike the FCRA, however, TILA explicitly states that "[n]o civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any department or agency thereof . . . ." 15 U.S.C. § 1612(b).

Stellick argues that this provision of TILA is strong evidence that Congress intended to waive sovereign immunity under the FCRA. He reasons as follows: TILA and the FCRA were enacted only two years apart. Each statute is a subchapter of the CCPA. Each statute defines "person" to include governmental entities, and each statute authorizes a party injured by a "person's" violation of the statute to recover damages from that "person." In all material

respects, then, TILA and the FCRA are identical — with one critical exception: Congress included within TILA (but not within the FCRA) a provision that explicitly preserved sovereign immunity. Congress would not have included such a provision in TILA unless it believed that, *without* the provision, TILA would be construed to waive sovereign immunity. The FCRA is essentially TILA without the explicit statement — and thus, following Congress's logic, the FCRA waives sovereign immunity.

Stellick makes a similar argument with respect to the ECOA. The ECOA was enacted by Congress in 1974 — four years after the FCRA, and six years after TILA — and constitutes subchapter IV of the CCPA. Once again, like the FCRA and TILA, the ECOA defines "person" to include "government or governmental subdivision[s] or agenc[ies]," 15 U.S.C. § 1691a(f), and authorizes a party who is injured by a "person's" violation of the statute to recover damages from that "person," *see* 15 U.S.C. § 1691e(a) (holding "[a]ny creditor who fails to comply" liable, with creditors defined within § 1691a(e) as persons). But like the FCRA, and unlike TILA, the ECOA does not include a provision explicitly preserving sovereign immunity.

In *Moore v. U.S. Department of Agriculture*, 55 F.3d 991 (5th Cir. 1995), the Fifth Circuit found that Congress waived sovereign immunity as to claims brought pursuant to the ECOA. *Moore*, 55 F.3d at 994. According to *Moore*, Congress understood that the definition of "person" in TILA potentially exposed governmental entities to liability, and therefore included the provision expressly preserving sovereign immunity. Only six years later, Congress again exposed governmental entities to liability through its definition of "person" — this time in the ECOA — but failed to include such a provision. *Moore* found in this difference an unequivocal

expression by Congress of its intention to waive sovereign immunity under the ECOA. Stellick asks this Court to extend *Moore*'s reasoning to the FCRA.

There is some force to *Moore*'s reasoning and Stellick's argument. But the Court nevertheless finds that the FCRA does not waive the sovereign immunity of the DOE for a number of reasons:

*First*, the Supreme Court has said repeatedly that consent to be sued must be "unequivocally expressed." *Bormes*, 133 S. Ct. at 16 (internal quotations omitted). A waiver of sovereign immunity cannot be implied. *See United States v. King*, 395 U.S. 1, 4 (1969). In *implying* that Congress meant to waive sovereign immunity under the ECOA because of differences between TILA and the ECOA, *Moore* appears to have done exactly what the Supreme Court said should not be done. This Court is reluctant to go down the same path with respect to the FCRA.

*Second*, at the time that the FCRA was enacted in 1970, its remedial provisions applied not to "person[s]," but to consumer-reporting agencies. *See* Pub. L. No. 104-208, § 2412(a), 110 Stat. 3009, 3446 (1996). (The remedial provisions of the FCRA were not broadened to apply to all "persons" until 1996.) As far as the Court is aware, no agency of the federal government was acting as a consumer-reporting agency in 1970,[2] and thus no federal agency could have been held liable under the FCRA at the time that the FCRA was enacted. It is understandable, then, why Congress did not think to include within the FCRA a provision explicitly preserving sovereign

---

[2]The NSLDS was established in 1986, and did not take on its current role until 1989, nearly two decades after the FCRA was passed. *See* Pub. L. No. 99-498, § 407(a), 100 Stat. 1268, 1486 (1986); Pub. L. No. 101-239, § 2008, 103 Stat. 2106, 2121 (1989).

immunity; if Congress even thought about the question, it likely concluded that such a provision was unnecessary.

*Third*, it is doubtful that Congress believed that it was establishing a consumer-reporting agency when it created the NSLDS in 1986. The statutes governing the NSLDS seem to envision that the agency would work *with* consumer-reporting agencies, not *become* a consumer-reporting agency. *See* 20 U.S.C. § 1080a. It seems entirely possible — perhaps even likely — that it simply never occurred to Congress that the NSLDS could be held liable under the FCRA.

*Fourth*, the FCRA permits courts to impose punitive damages on persons who willfully violate the FCRA. *See* 15 U.S.C. § 1681n(a)(2). But Congress only infrequently authorizes the recovery of punitive damages against the United States; indeed, Congress often preserves sovereign immunity as to punitive damages even when it broadly and explicitly waives sovereign immunity as to actual damages. For example, the Federal Tort Claims Act, 28 U.S.C. § 2674, generally waives the sovereign immunity of the United States as to tort claims, but states that the United States "shall not be liable . . . for punitive damages." Likewise, the ECOA explicitly states that governmental entities cannot be held liable for punitive damages. 15 U.S.C. § 1691e(b). It is conceivable that Congress intended to expose the United States to punitive damages under § 1681n,[3] but it appears more likely, given the legislative history described above,

---

[3]One section of the FCRA does, in fact, expose the federal government to punitive damages for particular types of violations of the FCRA. *See* 15 U.S.C. § 1681u(i) ("Any agency or department of the United States . . . is liable [under this section] . . . if the violation is found to have been willful or intentional, [for] such punitive damages as a court may allow . . . ."). But if, as Stellick argues, Congress waived sovereign immunity as to *all* violations of the FCRA, then § 1681u would be unnecessary.

that Congress failed to realize that the FCRA could be read to expose the NSLDS to punitive-damages claims under § 1681n.

*Fifth*, the FCRA imposes *criminal* liability on "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses . . . ." 15 U.S.C. § 1681q. Just as it is unlikely that Congress intended to waive sovereign immunity as to punitive damages throughout the FCRA, it is unlikelier still that Congress intended to expose governmental entities to criminal penalties. Yet the section of the FCRA that imposes criminal liability uses the same "any person" formulation found in the sections that impose civil liability.

*Sixth*, the United States government is one of the world's largest creditors. The consequences of holding that the federal government can be held liable for any violation of the FCRA would be immense. In such circumstances, it is particularly important to insist that Congress waive sovereign immunity expressly and clearly.

*Finally*, it appears that all of the other courts that have explicitly addressed the question of whether the FCRA includes a waiver of sovereign immunity — with only one exception[4] — have concluded that it does not. *See Taylor v. United States*, No. CV-09-2393-PHX-DGC, 2011 WL 1843286, at *5 (D. Ariz. May 16, 2011); *Gillert v. U.S. Dep't of Educ.*, Civ. No. 08-6080,

---

[4]*See Talley v. U.S. Dep't of Agric.*, No. 07 C 0705, 2007 WL 2028537 (N.D. Ill. July 12, 2007). *Talley* has experienced a convoluted afterlife. On appeal, a panel of the Seventh Circuit avoided the question of whether the FCRA waived sovereign immunity, instead finding that the Little Tucker Act, 28 U.S.C. § 1346(a)(2), supplied the necessary waiver of sovereign immunity for the plaintiff to sue the government for violations of the FCRA. *See* 595 F.3d 754, 757-760 (7th Cir. 2010). An equally divided *en banc* Seventh Circuit vacated the opinion of the panel and affirmed the judgment of the district court. *See* No. 09-2123, 2010 WL 5887796, at *1 (7th Cir. Oct. 1, 2010). The Supreme Court has since rejected the argument that the Little Tucker Act can supply the waiver of sovereign immunity necessary to recover against the government under the FCRA. *See United States v. Bormes*, 133 S. Ct. 12 (2012).

2010 WL 3582945, at *3-4 (W.D. Ark. Sept. 7, 2010); *Bormes v. United States*, 638 F. Supp. 2d 958, 961-62 (N.D. Ill. 2009), *vacated on other grounds by* 626 F.3d 574 (Fed. Cir. 2010), *vacated sub nom. United States v. Bormes*, 133 S. Ct. 12 (2012); *Ralph v. U.S. Air Force MGIB*, Civil Action No. 06-CV-02211-ZLW-KLM, 2007 WL 3232593, at *2-3 (D. Colo. Oct. 31, 2007); *Kenney v. Barnhart*, No. SACV 05-426-MAN, 2006 WL 2092607, at *9 (C.D. Cal. July 26, 2006). Stellick cites a handful of cases in which courts have addressed the merits of an FCRA claim against a federal agency, *see* ECF No. 51 at 11 n.7, but there is no evidence that the United States raised a sovereign-immunity defense in any of those cases, nor is there any evidence that it occurred to any of those courts to inquire into their own jurisdiction. *See, e.g.*, *Banks v. United States*, Civil Action No. 05-6853, 2007 WL 1030326, at *5 (E.D. La. Mar. 28, 2007).

For these reasons, the Court concludes that nothing in the FCRA waives the sovereign immunity of the DOE. "Sovereign immunity is jurisdictional in nature." *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 793 (8th Cir. 1996) (citing *FDIC v. Meyer*, 510 U.S. 471 (1994)). Therefore, Stellick's claims against the DOE must be dismissed for want of jurisdiction.

ORDER

Based on the foregoing, and on all of the records, files, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant U.S. Department of Education's motion to dismiss [ECF No. 42] is GRANTED.

2. Plaintiff James Stellick's second amended complaint [ECF No. 30] is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 25, 2013							s/Patrick J. Schiltz
									Patrick J. Schiltz
									United States District Judge